UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                                              CASE NO: 2:15-cr-102-FtM-38CM

CORDELL FELIX
_____/

**ORDER**[1]

This matter comes before the Court on Defendant Cordell Felix's Motion to Suppress (Doc. #20) filed on November 6, 2015. The Government filed a Response in Opposition (Doc. #24) on November 17, 2015. The Court held a hearing on December 2, 2015. (Doc. #37). Defendant was present and represented by Assistant Federal Public Defender George Ellis Summers, Jr. The Government was represented by Assistant United States Attorney Charles D. Schmitz. The matter is ripe for review.

**Background**

During the late hours of June 20, 2015, the Fort Myers Police Department ("FMPD") received a 911 call reporting an armed robbery. The victims explained that two African American males in their twenties wearing black shirts ran up to them and demanded their keys and wallets. When the victims complied, the suspects fled the scene heading east towards a residential neighborhood behind Redbones, a local bar. The FMPD dispatcher relayed this information to Officer Nicolas Ursitti, who proceeded to the

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

area in question. While canvasing the area for suspects, Officer Ursitti encountered Defendant walking by himself. Because Defendant matched the suspects' description – i.e., a black male in his twenties wearing a black shirt – Officer Ursitti approached him. When Officer Ursitti got close, Defendant immediately fell to his knees and telephoned his mother. Officer Ursitti informed Defendant that an armed robbery had just occurred and that he matched the description of the suspects. When Officer Ursitti asked permission to frisk Defendant, he refused. Eventually, Officer Ursitti frisked Defendant and found a loaded pistol in his waistband and various illicit drugs in his pockets. Defendant now seeks to exclude that evidence.

## Discussion

Defendant avers the evidence at issue should be suppressed because Officer Ursitti did not have reasonable suspicion to stop him. (Doc. #20 at 4). Defendant points out that (1) he was alone while the victims had reported two suspects; (2) he was walking while the suspects were last seen running; (3) he was heading southeast from Redbones, rather than east; (4) he was almost half a mile away from where the robbery was reported; and (5) he is in his thirties, not twenties. (Doc. #20 at 7).[2] The Government does not dispute that the encounter between Defendant and Officer Ursitti evolved into a stop at some point. But the Government disagrees with Defendant's contention that he was seized as soon as Officer Ursitti approached him. Nevertheless, the Government believes that even if the Court determines Defendant was seized immediately upon contact, Officer Ursitti maintained the reasonable suspicion required to do so. The Court will address each argument in turn.

---

[2] It should be noted that Defendant failed to present an argument contesting the veracity of the 911 caller/victim.

For Fourth Amendment purposes, encounters between citizens and law enforcement officers can be classified into three categories.  See *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006).  The first involves an exchange with no coercion or detention; it is completely voluntary and does not implicate the Fourth Amendment.  See *id.*  The second involves a *Terry* stop – a "brief, investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot."  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  A *Terry* stop constitutes a seizure under the Fourth Amendment "because it restrains the freedom of the detainee to walk away or otherwise remove himself from the situation." *Moore v. Pederson*, --- F.3d ----, 2015 WL 5973304, *5 (11th Cir. Oct. 15, 2015) (citing *Terry*, 392 U.S. at 16).  The third and final encounter involves a full blown arrest for which probable cause is required.  See *Perez*, 443 F.3d at 777.

The Court must first determine at what point Officer Ursitti seized Defendant.  Law enforcement officers do not violate the Fourth Amendment's prohibition on unreasonable seizures each and every time they approach an individual on the street.  See *United States v. Drayton*, 536 U.S. 194, 200 (2002).  Even without a basis for suspecting criminal activity, officers may approach individuals to pose questions and ask for identification, provided the individual's cooperation is not induced by coercive means.  See *id.* at 201.  A seizure occurs "only when, by means of physical force or a show of authority, a person's freedom of movement is restrained." *United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006) (citations omitted).  Put differently, "[i]f a reasonable person would feel free to terminate the encounter, then he or she has not been seized." *Drayton*, 536 U.S. at 201.

Determining whether a seizure occurred is an objective inquiry, requiring the Court to consider several factors: (1) whether the individual's path was blocked or impeded; (2) whether the individual's identification was retained; (3) the individual's age, education, and intelligence; (4) how long the detention and questioning lasted; (5) how many law enforcement officers were present; (6) whether any officers displayed their weapon; (7) whether any officer physically touched the individual; and (8) the officer's language and tone during the encounter.  See *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011).  None of these factors are dispositive, and they must be considered "among other things."  *Id.* (citation omitted).  Yet if the totality of these factors illustrate a show of authority sufficient to restrict the individual's freedom of movement, then the individual was seized under the Fourth Amendment.

The Government contends Officer Ursitti did not seize Defendant when he initially approached him because (1) Defendant dropped to his knees voluntarily; (2) Defendant's path was not blocked or impeded; (3) Defendant had "significant prior experience in the criminal justice system"; (4) Officer Ursitti did not draw his gun; and (5) the lights on Officer Ursitti's patrol car were not activated.  (Doc. #24 at 4-8).  But the dash cam footage from Officer Ursitti's patrol car – as shown at the hearing – paints a different picture.  In the video, Officer Ursitti spots Defendant walking by himself on the opposite side of the street.  Officer Ursitti immediately puts his spotlight on Defendant and proceeds to the opposite lane of traffic, parking his patrol car and blocking Defendant's path.  Officer Ursitti then activates his overhead red and blue lights,[3] turns them off, and exits his patrol car.  It was

---

[3] The Government contended at the hearing that only the back overhead lights came on.  Nevertheless, even when only the back overhead lights were activated on the unlit residential street, it appears from the dash cam video as if the entire overhead lights were activated.

4

only after these acts took place that Defendant stopped walking and eventually fell to his knees.  When these acts are viewed in their totality, it is clear that no reasonable person would feel they could terminate the encounter and walk away.  Consequently, under the Fourth Amendment, Officer Ursitti seized Defendant when he initially approached him. Having determined when the seizure occurred, the Court must now determine whether Officer Ursitti had the requisite reasonable suspicion.

A *Terry* stop is appropriate when (1) law enforcement officers "have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop was reasonably related in scope to the circumstances which justified the interference in the first place." *Jordan*, 635 F.3d at 1186 (citing *Terry*, 392 U.S. at 19-20, 30).  "Reasonable suspicion need not involve the observation of illegal conduct, but does require more than just a hunch." *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012) (citation omitted).  An officer must be "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21.

At the time the seizure occurred, Officer Ursitti was on the lookout for two black males in their twenties wearing black t-shirts.  The suspects were last seen heading towards a residential neighborhood behind Redbones.  When Office Ursitti arrived in the area, he witnessed Defendant who matched nearly every aspect of the suspects' description.  Defendant is thirty-two years old but could easily be mistaken for someone in their twenties.  He is a black male who was wearing a black t-shirt.  He was located approximately one half mile from the crime scene, less than ten minutes after the crime had been reported. And when Officer Ursitti approached him, Defendant started acting

nervously and walking in circles before Officer Ursitti even made contact with him. Defendant then dropped to his knees and placed a call to his mother. Based on these facts, Officer Ursitti had a reasonable suspicion that Defendant was possibly involved in the armed robbery, and a search of Defendant for weapons was reasonably related in scope to that suspicion.

When Officer Ursitti stopped Defendant, he made it very clear that an armed robbery had just occurred and that Defendant matched the suspects' description. Officer Ursitti told Defendant that if he could pat Defendant down for weapons and found nothing, he would let Defendant walk away right then. Defendant refused and fell to his knees, concealing his waistband. Defendant proceeded to call his mother and requested that Officer Ursitti speak with her to explain what was going on. While Officer Ursitti obliged and talked to Defendant's mother, several additional officers arrived. At that point, Officer Ursitti instructed Defendant to put his arms out at his side. When Defendant complied, Officer Ursitti patted him down and found a revolver.

Stopping an individual who matches the description of an armed robber in relative close proximity to the crime scene, within ten minutes of the crime occurring, and patting them down for weapons is well within the bounds of the Fourth Amendment and *Terry*.

Accordingly, it is now **ORDERED**:

Defendant Cordell Felix's Motion to Suppress (Doc. #20) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this December 16, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record